Filed 9/3/14  In re Erick L. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re ERICK L., JR., A Person Coming Under Juvenile Court Law.<br><br>_____<br><br>ERICK L., SR.,<br><br>    Defendant and Appellant,<br><br>    v.<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent. | B253647<br><br>(Los Angeles County<br> Super. Ct. No. CK92816) |

APPEAL from an order of the Superior Court of Los Angeles County.  Julie F. Blackshaw, Judge.  Affirmed.

Law Office of John M. Kennedy, John M. Kennedy for Defendant and Appellant.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel, Peter Ferrera, Deputy County Counsel, for Plaintiff and Respondent.

_____

Erick L., Sr., (father) appeals from a December 18, 2013 order of the juvenile court terminating his parental rights to his son, Erick L., Jr., (Erick). Father's whereabouts were listed as "unknown" throughout the underlying dependency proceeding, and the juvenile court found him to be the alleged father of Erick. Father contends: (1) the Los Angeles County Department of Children and Family Services (DCFS) did not make reasonable efforts to locate him; (2) based on the record before the juvenile court, father qualified as a presumed father, entitled to reunification services and the appointment of counsel; and (3) because father was a presumed and non-offending father, the juvenile court erred when it terminated his parental rights absent a finding that he was an unfit parent or that placement with him would be detrimental to Erick. We affirm the juvenile court's order.

## FACTUAL BACKGROUND

Erick, now age four, came to the attention of DCFS on March 27, 2012, when a DCFS social worker happened upon a physical altercation between Erick's mother, Karen G., and Byron F., the father of her then four-month-old son, Steve F. Mother endangered Steve by placing him next to the front passenger tire of her idling vehicle.

DCFS detained both Erick and Steve, and filed a Welfare and Institutions Code section 300 petition[1] on April 2, 2012. Erick and Steve were placed with their maternal grandmother, Dora F., and mother was given monitored visitation.[2]

When DCFS initially detained Erick, mother told the social worker that she did not know father's whereabouts, but he was in Honduras. The detention report prepared by DCFS indicates father's whereabouts were "unknown in Honduras, Central America."

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] On February 18, 2014, two-year-old Steve died after mother left him in the care of a family friend who beat him severely. DCFS detained Erick in foster care, but the juvenile court ordered him returned to Dora F. We denied a petition for writ of mandate filed by DCFS. (*Los Angeles County Department of Children and Family Services v. Superior Court* (June 23, 2014, B255694) [nonpub. opn.].)

Mother also reported that father was not listed on Erick's birth certificate, did not provide Erick with the basic necessities, and had no role in Erick's life. Because it did not know father's whereabouts, DCFS could not notify him of the detention hearing. At the detention hearing, on April 2, 2012, mother told the juvenile court that father did not hold himself out as Erick's father. The court found father to be Erick's alleged father.

In a subsequent interview with DCFS, mother stated that she met father when she was in high school, and both she and father were happy when she became pregnant. She and father lived together for approximately one year, but she terminated the relationship because she was no longer in love with him. Mother met Byron F. a few months after she left father, and became pregnant with Steve within the first month of dating Byron F. On April 19, 2012, mother told DCFS that Erick had known Byron F. since Erick was approximately one year old, and Byron was "the only father . . . Erick knows."

DCFS attempted to locate father prior to the jurisdictional hearing on April 24, 2012. DCFS filed a declaration of due diligence in which it listed the sources it had searched using the name "Eric R. [L.]" with a birth date of June 8, 1989, the birth date mother provided to DCFS. These sources included the U.S. Postal Service, different branches of the military, the Department of Motor Vehicles, the Department of Justice, Los Angeles County Jail and the state and federal prison systems, Lexis-Nexis, and voter registration. DCFS also contacted friends and relatives. A search of the CCSAS [California Child Support Automated System] revealed a possible address (a residence and a post office box) for "Erick Roberto [L.]" and Erick Vasquez [L.] in Biggs, California. DCFS mailed a notice of hearing and a copy of the section 300 petition to both addresses via certified mail. Father did not live in Biggs, California.

On May 21, 2012, the juvenile court found DCFS had given notice of the jurisdictional hearing to father as required by law. The court sustained the petition, found both Erick and Steve to be dependents of the court, removed them from mother and Byron F., and ordered reunification services for mother and Byron F.

In a report prepared for the six-month review hearing on November 19, 2012, DCFS again listed father's whereabouts as "unknown." DCFS gave notice of the hearing

3

to father at an address on Hazelhurst Place in North Hollywood. Father did not live at that address.

On February 22, 2013, the juvenile court terminated family reunification services for mother and Byron F., and set a section 366.26 hearing to select a permanent plan for the children.

In a report prepared for the section 366.26 hearing on June 21, 2013, DCFS continued to report father's whereabouts as unknown. However, DCFS had recently obtained Erick's birth certificate which (contrary to the information provided by mother) listed "Erick Roberto [L.]" as the child's father. DCFS submitted another due diligence declaration, which reflected that DCFS had searched for father through various Internet sources and sent contact letters to father at three potential addresses, all in Los Angeles: Gramercy Place, Kansas Avenue and Catalina Street. A DCFS social worker visited the first two addresses. At the Gramercy Place address, the resident stated that although mother and the children had lived in the home for a couple of months with Byron F., father had never lived there and the resident had no information about or contact with father. The Kansas Avenue address had several apartment units, but it was a four-plex and the apartment number provided to DCFS (No. 12) did not exist. The DCFS social worker spoke with two residents of the complex, neither of whom had any knowledge of father. Father did not respond to the contact letter sent to him at the Catalina Street address.

On July 2, 2013, the juvenile court granted a request by DCFS to give notice of the section 366.26 hearing to father by publication. DCFS served father by publication in the Los Angeles Bulletin on July 10, 17, 24 and 31, 2013. On September 20, 2013, the juvenile court found notice of the proceedings had been given as required by law.

At the section 366.26 hearing on December 18, 2013, the court found notice of the hearing had been given to all parties as required by law, and it terminated the parental rights of all three parents.

Father learned of the proceedings shortly after the December 18, 2013 hearing, and filed a notice of appeal on January 9, 2014. Father also filed a section 388 petition.

4

The juvenile court denied the section 388 petition on January 24, 2014, finding that "the best interests of the [child] would not be promoted by [the] proposed change of order."

## DISCUSSION

### 1.    Due Diligence

Father first contends DCFS did not exercise due diligence in an effort to notify him of the dependency proceedings.  We disagree.

"In juvenile dependency proceedings, due process requires parents to be given notice that is reasonably calculated to advise them an action is pending and afford them an opportunity to defend." (*In re Jasmine G.* (2005) 127 Cal.App.4th 1109, 1114.)  "The child welfare agency must act with diligence to locate a missing parent.  [Citation.]  Reasonable diligence denotes a thorough, systematic investigation and an inquiry conducted in good faith.  [Citation.]  [¶]  However, there is no due process violation when there has been a good faith attempt to provide notice to a parent who is transient and whose whereabouts are unknown for the majority of the proceedings.  [Citations.]"  (*In re Justice P.* (2004) 123 Cal.App.4th 181, 188.)

The record in this case does not support father's claim that DCFS merely accepted at face value mother's representation that father was in Honduras.  Had DCFS taken mother's representations at face value, it would have confined its search for father to Honduras.  Instead, DCFS conducted exhaustive searches for father using a variety of sources (although these searches may have been hampered by the fact that father has an extremely common last name).  In addition, a DCFS social worker visited two addresses where DCFS believed father may have resided, and mailed notices to three other addresses.  Substantial evidence supports the juvenile court's finding that DCFS acted in good faith and with due diligence in trying to locate father.

Father contends that DCFS should have conducted an "obvious search of Facebook," because he regularly contacted Dora F.'s Facebook account throughout the period in which the dependency case was pending.  We know of no authority that would require DCFS to search Facebook or any other social medium to locate an absent parent.

5

And, even if father's claim that mother and Dora F. misled DCFS, there is no indication in the record DCFS knew it was being misled.

## 2. Presumed Father Status

Father next contends that the juvenile court, with the record before it, should have found him to be the presumed, rather than the alleged, father of Erick. The record does not support father's claim.

"The Uniform Parentage Act (UPA), Family Code section7600 et seq., provides the statutory framework for judicial determinations of parentage, and governs private adoptions, paternity and custody disputes, and dependency proceedings." (*In re M.C.* (2011) 195 Cal.App.4th 197, 211, fn. omitted.) The UPA distinguishes between "biological," "alleged" and "presumed" fathers, with presumed fathers ranking highest. (*In re Jerry P.* (2002) 95 Cal.App.4th 793, 801.) "A man who may be the father of a child, but whose biological paternity has not been established, or, in the alternative, has not achieved presumed father status, is an 'alleged' father." (*In re Zacharia D.* (1993) 6 Cal.4th 435, 449, fn. 15.) In a dependency proceeding, an alleged father must be served with a copy of the petition and notice of the next hearing in the case. (Cal. Rules of Court, rule 5.635(g).) However, "only a presumed, not a mere biological, father is a 'parent' entitled to receive reunification services under section 361.5." (*In re Zacharia D.*, *supra*, at p. 451.)

California Rules of Court, rule 5.635(b) provides that at the detention hearing, or "at hearings thereafter until or unless parentage has been established," the juvenile court must "inquire of the child's parents present at the hearing and of any other appropriate person present as to the identity and address of any and all presumed or alleged parents of the child." The rule also sets forth a number of questions the court might ask to aid in its effort to determine whether a man is a child's biological, alleged or presumed father.[3]

---

[3] These questions include, but are not limited to: "(1) Has there been a judgment of parentage? [¶] (2) Was the mother married or did she have a registered domestic partner at or after the time of conception? [¶] (3) Did the mother believe she was married or believe she had a registered domestic partner at or after the time of conception? [¶]

The court may also inquire whether the man has consented to being named as the father on the child's birth certificate (Fam. Code, § 7611, subd. (c)(1)) and whether the man has received the child into his home and openly holds out the child as his natural child. (Fam. Code, § 7611, subd. (d).)

At the time of the detention hearing in this case, the juvenile court found that father was the alleged father of Erick, based on the following information, provided by mother, which was relevant to the issue of Erick's parentage: mother met father when she was 17 and moved in with father when she turned 18; father was not listed as the father on Erick's birth certificate; father's whereabouts were unknown, but he was somewhere in Honduras; and father did not provide Erick with the basic necessities, did not hold himself out to be Erick's father, and had no role in Erick's life. The court properly found father was Erick's alleged father based on these facts.

The jurisdiction/disposition report contained additional information about mother and father's relationship. Specifically, mother told DCFS that she and father had lived together for approximately one year, but she terminated the relationship because she no longer loved him. DCFS also learned that mother had named father as Erick's father on Erick's birth certificate.

Father contends the court, having learned these additional facts, should have reassessed the situation and found father to be Erick's presumed father "solely on the four corners of the record." According to father, such a finding would have entitled him to the appointment of counsel, who could have, even in father's absence, asserted father's interests before the juvenile court.

Even if the court had reassessed the situation, the record was not sufficient for the court to find that father was the presumed father of Erick. Although mother

---

(4) Was the mother cohabiting with another adult at the time of conception? [¶] (5) Has the mother received support payments or promises of support for the child or for herself during her pregnancy or after the birth of the child? [¶] (6) Has a man formally or informally acknowledged paternity, including the execution and filing of a voluntary declaration of paternity under Family Code section 7570 et seq., and agreed to have his name placed on the child's birth certificate?" (Cal. Rules of Court, rule 5.635(b).)

7

acknowledged she and father had resided together for a year, the court was not required to assume, based on that information alone, that father "openly held out Erick as his natural child." Nor was father's name on Erick's birth certificate sufficient in and of itself to mandate father being a presumed father, because there was no evidence before the court that father consented to being named as Erick's father on the birth certificate.

### 3.     Termination of Father's Parental Rights Was Proper

Finally, father contends that because he was a non-offending, non-custodial parent, the juvenile court could not terminate his parental rights absent a finding that placement of Erick with father would be detrimental to the child, or that father was unfit. No such finding is required because father was merely an alleged, not presumed, father.

### 4.     Habeas Corpus Petition

On March 21, 2014, father filed a petition for writ of habeas corpus. (*In re Erick L.*, *Sr.*, B255059.) The petition is supported by father's declaration in which claims, among other things, that mother concealed his whereabouts from DCFS, and misled DCFS concerning father's relationship with mother. According to father, he and mother lived together beginning in 2008, prior to Erick's birth. After Erick was born, father, mother and Erick lived together as a family, and father openly held out Erick as his son. Father also claims both mother and Dora F. knew how to contact him via Facebook. The petition is also supported by documents that are outside the record on appeal.

We conclude, based on father's declaration and supporting evidence, that father has stated a prima facie claim for relief with respect to the claims raised in the habeas corpus petition. Accordingly, concurrently with the filing of this opinion, we will issue an order to show cause in the habeas corpus proceeding, returnable in the juvenile court.[4]

---

[4]     On April 14, 2014, we issued an order stating the petition would not be consolidated with the appeal nor calendared for oral argument, but would be considered concurrently with the appeal. DCFS filed an informal response to the petition on April 24, 2014, and father filed a reply on May 13, 2014.

## DISPOSITION

The order of the juvenile court is affirmed.  This opinion shall become final immediately upon filing.  (Cal. Rules of Court, rule 8.490(b)(2)(A).)

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.          FERNS, J.*

---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9